Filed 3/16/15  P. v. Moralez CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | C076091 |
| Plaintiff and Respondent, | (Super. Ct. No. 13F06775) |
| v. | |
| FIDEL MORALEZ, | |
| Defendant and Appellant. | |

A jury found defendant Fidel Moralez guilty of robbery and assault that occurred when defendant shoplifted from a Safeway grocery store in midtown Sacramento and then stabbed a loss prevention agent in the arm.

Defendant appeals from his conviction, contending:  (1) the court violated his right to due process in refusing his pinpoint instruction; (2) the court erred in granting the People's request to instruct that the right to self-defense may not be contrived; (3) the alleged instructional errors together violated his right to due process; (4) the court erred

1

in discharging a juror who was ill; and (5) the effect of all the alleged errors was prejudicial. Disagreeing, we affirm.

FACTUAL AND PROCEDURAL BACKGROUND

In October 2013, the Safeway store had on duty a uniformed security guard, Lance Brewer, and two plain clothes loss prevention agents, Chriss Grimble and Michael Nicholson. Around 5:00 p.m., Grimble saw defendant hide sandwiches, cough syrup, and bananas in his clothes. Grimble alerted Nicholson to what was going on, and Nicholson said he had seen it, too. Defendant left Safeway without paying. The agents followed defendant, and Grimble yelled to him, " 'Hey.' " " 'Hey, I am talking to you.' " Defendant turned around and looked at Grimble, who said, " 'We're store security.' " Defendant "just stood there and looked at [the agents]." Grimble got in front of defendant, Nicholson came around the other side, and Grimble put his "hand out" and said, " 'Just hold on for a minute.' " Nicholson said, " 'Just come back inside, give us the items back.' " The agents went to grab defendant. Grimble "got a hold of [defendant.]" Defendant pulled a "big, solid knife" from his pocket and stabbed Nicholson in the arm, leaving him with a six-to-seven-inch scar and numbness and "pins and needles" in his fingers and hand.

Security guard Lance Brewer saw the encounter. The two loss prevention agents were talking to defendant. Grimble was behind defendant and Nicholson was circling in front of defendant. Defendant then pulled out of a knife from his pocket. Once Nicholson saw the knife, he "reached for that hand the knife was in."

DISCUSSION

I

*The Court Properly Refused Defendant's Pinpoint*

*Jury Instruction Because It Was Duplicative*

Defendant contends the court erred in refusing his pinpoint instruction, violating his right to due process of law. We disagree because it was duplicative of the self-defense instruction the court gave.

A

*Defendant's Proposed Pinpoint Instruction*

Defendant's proposed pinpoint instruction provided as follows:

"Store security or loss prevention officers may only use a reasonable manner to detain a suspected shoplifter.

"If you find that the manner in which the loss prevention officers attempted to detain the suspect was not reasonable, then they are acting outside of their legal authority and a suspected person can use such force that is reasonably necessary to avoid assault or injury.

"If you find that the suspect used such force as was reasonable under the circumstances, then you must find the defendant not guilty of the robbery and assault allegations in Counts 1 and 2."

B

*Defendant's Pinpoint Instruction Was Duplicative*

The trial court " 'may properly refuse an instruction offered by the defendant if it [is] . . . duplicative.' " (*People v. Bivert* (2011) 52 Cal.4th 96, 120.) The pinpoint instruction here was duplicative because, as the trial court pointed out, "everything in that instruction . . . is already going to be given by the [c]ourt in 3470 of CALCRIM." CALCRIM No. 3470, as read to the jury, stated the following: "Self-defense is a defense to assault with a deadly weapon as charged in Count 2 and the lesser offense to that

3

charge of simple assault and robbery in Court 1." "The defendant is not guilty of those crimes if he used force against the other person in lawful self-defense." "The defendant acted in lawful self-defense if," among other things, "the defendant reasonably believed he was in imminent danger of suffering bodily injury or was in imminent danger of being touched unlawfully" and he "reasonably believed that the immediate use of force was necessary to defend against that danger." "The People have the burden of proving beyond a reasonable doubt that the defendant did not act in lawful self-defense." "If the People have not met this burden, you must find the defendant not guilty . . . ." Since the jury was adequately instructed on defendant's right to self-defense, the refusal to give defendant's proposed pinpoint instruction (that told the jury it could not find defendant guilty if he acted reasonably to avoid assault or injury by the loss prevention agents) did not deprive him of due process of law. (See *People v. Kraft* (2000) 23 Cal.4th 978, 1063 [the trial court's refusal of defendant's duplicative pinpoint instructions did not deprive him of due process].)

II

*The Court Correctly Gave CALCRIM No. 3472 That The Right To Self-Defense*
*May Not Be Contrived, As It Was Supported By The Evidence*

At the People's request, the trial court instructed pursuant to CALCRIM No. 3472 that, "A person does not have the right to self-defense if he . . . provokes a fight or quarrel with the intent to create an excuse to use force." Defendant contends there was "absolutely no testimony or statements by [defendant] to the loss prevention officers or actions on his part that would demonstrate provocation to fight." Not so.

Security guard Lance Brewer saw the encounter. He testified the two loss prevention agents were talking to defendant. Defendant then pulled out a knife from his pocket. Once Nicholson saw the knife, he "reached for that hand the knife was in." Thus, there was evidence from which a jury could find that defendant, who was about to be caught with stolen items on him, escalated the encounter by taking out a deadly

4

weapon, creating a situation in which the loss prevention agents would put hands on him. Thus, defendant is wrong when he states there was no evidentiary support for the instruction because the loss prevention agents "went 'hands on' *before* [defendant] pulled out his knife." As there was sufficient evidence to support giving the instruction, the court did not err, constitutionally or otherwise, in giving this instruction. (See *People v. Ross* (2007) 155 Cal.App.4th 1033, 1049-1050 [a party is entitled to a requested instruction if it is supported by substantial evidence].)

III

*There Was No Due Process Violation From Denying*

*Defendant's Pinpoint Instruction And Giving CALCRIM No. 3472*

In a separate argument, defendant contends "[t]he combination of the court's refusal to grant the requested pinpoint instruction and its granting the provocation instruction also violated [his] right to due process under the federal constitution." Defendant's contention is a non-starter because it is premised on arguments we have already rejected in parts I and II of the Discussion. Thus, there was no due process violation in refusing the pinpoint instruction and giving CALCRIM No. 3472.

IV

*The Trial Court Was Well Within Its Discretion*

*To Discharge A Juror For Illness And Substitute Another*

Defendant contends the trial court erred by discharging Juror No. 10 "without conducting a hearing to determine whether she was capable of continuing" "or in the alternative to postpone further deliberations until the next court day."

A

*Facts Behind The Juror's Discharge*

The facts behind the juror's discharge were as follows: The jury began deliberating around noon on Thursday, January 30, 2014. The jury had not reached a verdict by the end of the day, so the court had it adjourn and return the next day. At 9:00

5

a.m. the next day, Juror No. 10 "stated to the bailiff that she was ill and needed to go home." At 9:15 a.m., "both counsel arrived and met with the [c]ourt in chambers to discuss the situation with the ill juror." After this discussion, the court summarized what had happened. "[A]t 9 o'clock, Juror [No.] 10 showed up complaining of pain to her head and body aches. Sounded flu like. And she wanted to go home. She asked to go home." The court "contacted the lawyers about that issue." The prosecutor "wanted to just substitute a juror in." Defense counsel "objected to that . . . and wanted to send her home and just come back on Monday." The court discharged Juror No. 10 and substituted in an alternate juror. The court explained, "we have all the rest of the jurors here." "They have a whole day that they can still deliberate." The court then told the remaining jurors and the alternate as follows: "Juror [No.] 10 came in this morning complaining of what sounded like flu-like symptoms. I don't know exactly what's wrong with her, but she definitely needed to go home." "I don't think it would be right to . . . force her to be in the same room . . . confined with 11 other people. [¶] Hopefully, there wouldn't be any repercussions from what happened yesterday in that small room. Take your vitamins." The court then read to the newly-comprised jury the instruction requiring it to start deliberations anew.

*B*

*The Court Acted Within Its Discretion In Discharging Juror No. 10*

"If at any time, whether before or after the final submission of the case to the jury, a juror . . . becomes ill, or upon other good cause shown to the court is found to be unable to perform his or her duty, or if a juror requests a discharge and good cause appears therefor, the court may order the juror to be discharged and draw the name of an alternate . . . ." (Pen. Code, § 1089.) "A trial court learning of grounds for dismissal 'has an affirmative obligation to investigate.' [Citation.] However, '[b]oth the scope of any investigation and the ultimate decision whether to discharge a given juror are committed to the sound discretion of the trial court.' " (*People v. Duff* (2014) 58 Cal.4th 527, 560.)

6

"[I]n reviewing a decision to excuse a juror, we do not ask only whether substantial evidence supports the decision--i.e., whether there is evidence from which a reasonable trial court could have concluded dismissal was warranted--but further whether it appears as a 'demonstrable reality' that the trial court actually did rely on such evidence as the basis for its decision." (*Ibid*.) "The requirement we add to traditional substantial evidence review is that the record establish the actual basis for the trial court's decision. So long as it does, we ask only whether the evidence relied upon was sufficient to support that basis as grounds for dismissal; we do not independently reweigh the evidence or demand more compelling proof than that which could satisfy a reasonable jurist." (*Ibid*.)

Here, it was undisputed Juror No. 10 was ill and that the court relied on that illness to discharge her. Illness is cause to dismiss a juror. (Pen. Code, § 1089.) "The demonstrable reality test does not demand of trial judges confronted with sick jurors that they elicit conclusive proof of the length of future incapacitation; judges are lawyers, not doctors. Nor does it demand that incapacitation exceed some preset length; in the right circumstances, an absence of a day or less may warrant excusal. [Citations.] Whether a juror's illness can best be accommodated by a continuance or replacement with an alternate is a matter committed to the trial court's discretion." (*People v. Duff*, *supra*, 58 Cal.4th at pp. 560-561, fn. omitted.) The trial court weighed the arguments regarding replacing Juror No. 10 against keeping her. It found more convincing the fact that the remaining 11 jurors were present and ready to proceed, the possibility that Juror No. 10 was contagious, and the judicial economy of allowing the remaining jurors and the alternate to deliberate that day, even though they would need to start deliberations anew. This evidence that the court relied upon was sufficient to support illness as grounds for dismissal.

V

*There Were No Errors To Accumulate*

Defendant contends the cumulative effect of the errors he has alleged requires reversal.  We have found no errors, so there are none to accumulate.

DISPOSITION

The judgment is affirmed.


                                        ROBIE            , Acting P. J.


We concur:



     MAURO          , J.



     DUARTE         , J.